### THOMPSON et al. v. FUNK et al.

No. 20341. Opinion Filed March 15, 1932.

Rehearing Denied June 21, 1932.

Ledbetter, Stuart, Bell & Ledbetter and Chas. L. Moore, for plaintiffs in error.

Wm. G. Davisson, for defendants in error.

KORNEGAY, J. This was a suit commenced by the present defendants in error, namely, R. B. Funk and Vyrna A. Funk, against the present plaintiffs in error, James S. Thompson, Nancy E. Thompson, and W. E. Mills, in the district court of Oklahoma county on the 16th day of May, 1928, for the specific performance of a contract entered into between the parties for the transfer by the present plaintiffs in error of lots 1, 2, 3, 4, and 5 of block 36, Maywood addition to Oklahoma City, and the west half of lot 4 and lot 5 of block 43 of the townsite of Clinton, Okla., in exchange for parts of sections 18 and 19, township 7 north, range 26 east, located in LeFlore county, and known as the Funk farm, and also the northwest 10.93 acres of lot 2, section 30, in the same township and range. These were to be conveyed by warranty deed, subject to a $10,000 mortgage in favor of the School Land Department. In addition to this, the Funks were to convey by quitclaim deed a three-acre tract with some buildings thereon, which was block 20 of the Pennsylvania addition to the city of Poteau.

The Oklahoma City property was mortgaged to a Mrs. Payne for $22,000. The contract was not specific as to whether or not the respective grantees should assume the indebtedness that was secured by the respective mortgages. According to the allegations of the petition, the defendants, Thompsons, had failed to comply with the agreement, and in violation of the agreement had on the 21st of April, 1928, conveyed the Oklahoma City property to their codefendant, Mills, by warranty deed, which was recorded on the 23rd of April, 1928. There was an averment of constructive knowledge of the defendant Mills as to the rights of the parties, and that the copy of the contract declared on had been filed and recorded on the 12th of April in the office of the clerk of Oklahoma county. There was a prayer for judgment for specific performance, and for an accounting, and there was an offer of conveyance of the LeFlore county land.

None of the pleadings were verified. The contract had been executed in triplicate, one copy of which was retained by the real estate agent, O. R. Cureton, who had drawn the contract, one was held by the plaintiffs below, and one was held by the defendants below.

An answer was filed setting up an alteration in the contract, that was made by Cureton, according to the testimony, the alteration appearing on the recorded copy. It was a change from the word April to May in the recorded copy, and also a change from April 10th to April 14th in that copy. All parties agreed that the change from April to May, that appears in the body of the instrument, was duly authorized. The plaintiffs in error claim, however, that the change from April 10th, in the body of the contract, to April 14th was not authorized. It was further claimed that the Oklahoma City property was the homestead of the plaintiffs in error, who were husband and wife, and the property had been transferred, as shown by the abstract that is made a part of the case-made, by Mrs. E. F. Payne to "James S. Thompson and Nancy E. Thompson, husband and wife," under date of November 22, 1927. The certificate to

the abstract, in which this conveyance appears, is dated the 10th of April, 1928, at 7:30 a. m.

The next preceding date is the 14th of November, 1927. The defendants made a general denial, and admitted the execution of the contract, but claimed it had been altered without consent, and that the plaintiffs had failed to comply with the contract, and the title the plaintiffs had was not merchantable, and that the plaintiffs had failed to furnish abstract showing that they had a merchantable title, and special reliance was had upon the failure to furnish an abstract on or before April 10, 1928, and that this failure had avoided the contract.

It is further claimed that thereafter Funk had demanded a quitclaim deed and had abandoned the contract by refusal to quitclaim the Oklahoma property to the plaintiffs in error. The eighth paragraph of the answer averred that after the refusal of the quitclaim deeds and failure of Funk, the change from April 10th to April 14th was made in the instrument by some one on behalf of the plaintiffs below, and that it was placed on record by the plaintiffs, "knowing that by mutual consent and agreement the said written contract had been mutually abandoned by plaintiffs and both of these defendants, and that the change of the date in said contract was made for the purpose of allowing for an apparent additional time, and made for the purpose of showing on the record that the said plaintiffs had until April 14, 1928, to comply with said contract, when they knew that such time was in fact limited by said contract to April 10, 1928."

There was a further allegation of being ready with the abstract at the time and place specified in the written contract, and a failure on the part of the plaintiffs below to be there with their abstract. This breach was specially relied upon as destroying the rights of the plaintiffs under the contract. There was a further allegation that the purpose of the change was to put it upon record and cloud the title of the defendants below, the present plaintiffs in error.

There was an original cross-petition, later dismissed, setting up a breach of the obligation of the plaintiffs below, and the appearance of the defendants below with their abstract, ready to go on, and an allegation that the suit of the plaintiffs below was not prosecuted in good faith, and saying that defendants had been put to $1,000 expense, and asking for an adjudication that the contract was null and void, because the precedent conditions were not complied with, and that a material alteration therein had been made, which vitiated it, and asking for its cancellation and for $1,000 actual damages and $2,000 punitive damages.

There was a reply denying the allegations generally. The defendant Mills adopted the answer of his codefendants, and the reply to this was a denial generally. In addition to the general denial, plaintiffs denied the alteration of the contract, and stated that any alteration made in the contract was made by the agent of the defendants and at their instance and request. There was a further allegation of a delay from the 4th to the 7th of April, 1928, occasioned by the acts of the defendants, and that at the instance of the defendants and pursuant to their instruction, the defendants' agent changed the time for the delivery of the abstracts from April 10th to April 14th, and that the changes were incorporated therein, and that they acted thereon.

There is a further allegation of breach by the defendants below of their contract concerning the delivery of abstracts, and deeds, and allegations of being deceived by the defendants, and a plea of estoppel, and a denial of the damage. In reply to the answer of Mills, they made the same allegations, with the addition of the contract being on record at the time Mills got his deed.

With these pleadings, the parties went to trial before the district judge, and introduced their evidence, all parties testifying, and also the real estate agent. A demurrer was interposed to the plaintiffs' evidence and overruled, and defendants excepted. The evidence closed and the parties rested, and the case was continued to August 17, 1928, for arguments of counsel, and was taken under advisement from the 17th of August, 1928, to September 11, 1928. Judgment was then pronounced in favor of the plaintiffs, and on the 14th of September a motion to set aside the judgment and for new trial was filed. The motion to set aside the judgment was on the ground that it should have been the other way, and the motion for new trial was upon the ground of there not being sufficient evidence, judgment and decision being contrary to law, and not sufficient to sustain a decree for specific performance, and newly discovered evidence, and that errors of law had occurred at the trial, and that the judgment of

the court was contrary to the evidence in that the evidence showed an abandonment by the plaintiffs below of the contract.

Specifically there was a point made about the property being homestead, and that the court could not make a new contract for the defendants. The judgment entry and the proceedings leading up to it did not show any request for findings prior to its rendition. The journal entry of the judgment is found in the record, and in part is as follows:

"And on the 11th day of September, 1928, the parties to said cause being before the court by their counsel aforesaid and each party having announced that he had nothing further to present, and the court having fully considered the evidence in the case and the law applicable thereto, the court found the issues in favor of the plaintiffs and against the defendants, and that judgment should be rendered for the plaintiffs and against the defendants. To which judgment, at the time it was announced, the defendants, James S. Thompson, Nancy E. Thompson, and W. E. Mills, each and all, duly excepted and were allowed exceptions by the court, and defendants gave notice of their intention to file motion for new trial within the time prescribed by law and, if said motion for new trial be overruled, to appeal from the judgment and final order overruling said motion for new trial, and each of them, to the Supreme Court of the state of Oklahoma, and asked that said notices be entered by the clerk of this court on the trial docket of this court, which was accordingly so done."

The journal entry recites filing of motion for new trial and the appearance of the parties and the motion being overruled, and there is a formal rendition of judgment, canceling the Mills deed, requiring a deed to be made to the plaintiffs for lots 1, 2, 3, 4, and 5, block 36, of the Maywood addition to Oklahoma City, and the west half of lot 4 and all of lot 5 in block 45 in the town of Clinton, subject to the mortgage debt of $22,000 in favor of Mrs. Payne, and prescribing that the grantees, Funk and Vyrna Funk, should assume and pay the amount; the grantors, however, to pay interest to the 1st of May, 1928. There was a further provision for carrying out the judgment if the parties failed to make the deeds. There was also a provision for the delivery of the warranty deed to the Le Flore county property, and quitclaim deed that had been tendered, carrying the assumption clause and for the payment by the defendants of the lien for taxes and assessments accruing up to May 1, 1928. It further provided that the adjustments and judgment as to rentals, profits, and taxes should be deferred until after disposition by the Supreme Court of the appeal, provided a supersedeas bond were given in the sum of $3,000. Time was given to make and serve case-made, and the supersedeas bond was given and the case came here.

In the journal entry there is a specific statement that the property was the homestead of James S. Thompson and Nancy E. Thompson, and that Nancy E. Thompson did not personally authorize the change from April 10, 1928, to April 14, 1928, and did not personally authorize the change until after April 14, 1928. The court further found that James S. Thompson did authorize that change, and that he was the agent of the defendant Nancy E. Thompson in the entire transaction, and the defendants took an exception.

Elaborate briefs have been filed in this court, the brief of plaintiffs in error being filed on August 21, 1929, and the brief of defendant in error being filed October 1, 1929. What is styled additional authorities appears to be filed on the day of the oral argument, February 9, 1932, on behalf of the plaintiffs in error, and a reply brief on February 13, 1932, to this supplemental brief, and an additional brief for plaintiffs in error on February 18, 1932.

The brief of plaintiffs in error states a good deal of the evidence, and gives a resume of the pleadings, and makes a statement of facts, and reviews the things leading up to the motion for new trial, and sets out the affidavits for a new trial, and what is claimed to be the material part of the testimony, and sets out the assignments of error, the first being the overruling of the motion for new trial, the second being not sufficient evidence to sustain the judgment, the third being that judgment and decision was contrary to law, the fourth being because the judgment and decision was contrary to law and evidence, the fifth being that the evidence was insufficient to sustain the decree for specific performance, the sixth being that the evidence showed an abandonment by the plaintiffs below of the contract, the seventh being based on the homestead character of the property and the necessity of both parties signing the contract, the eighth being the overruling of the motion for new trial, based on the newly discovered evidence, the ninth being that the judgment and decision were contrary to the clear preponderance of the evidence,

and the tenth being that the judgment should have been the other way.

Argument is made as to the homestead character, under the Constitution of the state and the law as to the subject of making contracts concerning it, and the statute of frauds, and several cases are cited, among others Woodworth v. Franklin, 85 Okla. 27, 204 P. 452, and Halsell v. Renfrow, 14 Okla. 674, 78 P. 118, and cases are cited with a reference to the law of agency as applied to man and wife, and also as to the necessity for man and wife to join in homestead contracts, and the change from April 10th to April 14th, and time being the essence of the contract, and the alteration of written instruments, and time for the delivery of the abstracts being essential.

The second subdivision of the argument is based upon the dealing with the land owned by the Funks by them, and cases are cited to show that the question of abandonment is a question of fact. Comparison is made with some other cases that have come to this court, and our duty to review the evidence is stressed.

The third subdivision of the argument is that the plaintiffs below did not come into court with clean hands by reason of their unconscionable conduct. Reliance is placed on the proposition that Funk stated to plaintiff in error Thompson and his attorney, Moore, that he intended to sue for damages, and that the Thompsons were thereby misled, and that the parties had mortgaged the land and allowed liens to come on it. Some cases are cited from this court on the subject of clean hands in a court of equity, and also from the federal courts, and some maxims of equity are cited, and the gist of the argument is that a court of equity is a forum of conscience.

The fourth subdivision of the argument is on the newly discovered evidence, and some cases from this court are cited as to the rule about it being cumulative, and the requirement that it ought to be sufficient to change the result. Comment is made upon what seems to be persuasive with the lower court, viz., a statement of Funk to Gilliland about suing in this case for specific performance.

This fifth subdivision of the argument is with reference to placing a lien upon the property by the plaintiffs below, and therefore the plaintiffs were not in shape to demand specific performance, and some cases are cited to that effect.

Counter argument is made in the brief of the defendants in error, and a great many authorities are cited in an effort to show that the position of the plaintiffs in error is not well taken. The argument is made that the alteration was not material, and that there were three copies of the contract, and it was not made in all of them, and numerous authorities are cited to show that as long as one copy remained all right the contract was not vitiated, and the argument is made that the changes in the contract were made by the agent of the plaintiffs in error at their suggestion. The argument is made that the changes from the 10th to the 14th were scarcely material in any way, in view of the other stipulations in the contract, which would control the construction of the contract so far as time was concerned. Argument is made as to the statement of Mrs. Thompson as to her authorizing all other changes except from "10th to 14th," and that the judgment of the trial court was not contrary to the preponderance of the evidence, but was amply supported by it. That the abstracts were furnished in time, and that the Thompsons had failed in that regard themselves.

A great many extracts are taken from the testimony. It is insisted that the parties dealt with one another as late as the 17th of April in the matter, and that the plaintiffs in error paid the commission to Cureton as for a completed sale. The argument is made that there was no abandonment. Numerous authorities are cited under the various arguments. The argument is made that the newly discovered evidence was not sufficient to justify a new trial, and a great many authorities are cited on that proposition, and the argument is made that the liens placed on the lands of the defendants in error were not such as to prevent the carrying out of a contract for specific performance, as shown by the evidence. A great many authorities are cited to that effect.

Claim is made that the plaintiffs below were at all times ready, able, and willing to carry out their part, and the argument is made that the conduct of the plaintiffs in error was such as to excuse a strict compliance in time, and that there was a waiver of time with reference to the deposit of the abstract, and Black on "Rescission and Cancellation" is largely relied upon, and extracts therefrom are given.

At the date of the argument, a supplemental list of authorities was filed by the plaintiffs in error as to the duty of this court to weigh the evidence and to decide

the case in an equity matter. Suggestion is there made as to the latter part of the deed that was tendered by the defendants in error wherein it is stated that the grantee assumed payment of the debt. Some statement is made as to the time of attaching a lien for taxes, and also some cases are cited as to the purchase of an equity, as distinguished from the purchase of the land with a covenant to pay off the mortgage. Some reference is made to the alteration, and the effect of Dillon v. Ringleman, 55 Okla. 331, 155 P. 563. The case of Livengood v. Ball, 63 Okla. 90, 162 P. 766, is relied upon on the question of time being of the essence of the contract. It is claimed that the construction placed by the defendants in error upon the requirements of the contract as to delivery of the abstracts is highly technical. Complaint is made of the clause in the deed requiring the assumption of the mortgages by the respective parties.

A brief in reply to this has been filed, urging that this complaint concerning the assumption of the mortgage is now brought forward for the first time, and that under the settled rules of this court, not having complained of it in the trial court, and not having complained of it in the briefs and the assignments of error as originally brought here, the plaintiffs in error cannot complain now. The further position is taken that the contract being ambiguous, the construction placed on it by the parties would be followed by the court anyway. A great many cases are cited to sustain the position that not having raised it before, it is too late now. The position is taken that the trial court's judgment is sustained by the evidence.

An additional brief has been filed saying that this court could not affirm the judgment of the trial court by requiring the claim as to the assumption of mortgage to be taken out of the deed ordered to be made. Some Illinois cases are cited to show that he who seeks specific performance must show that he has followed the contract at the time and in the means provided. Ruling Case Law is cited to the same effect. An argument is made on the responsibility for the acts of Cureton, and it is claimed that he was the agent for both parties. Some reference is made to the introduction of the receipts in evidence of the deeds made by Cureton. It is claimed that Cureton was favorable to Funk, and our attention is called to the fact that on pages 22 and 23 of the printed brief his receipt was set out, and that that receipt carried with it a statement that the deed contained an assumption

clause, and some explanation is made of the position of the plaintiffs in error with reference to the deed not following the contract.

We have reviewed the entire evidence in this case, and we think the trial court did not err in reaching the conclusions it did. The contract on its face is ambiguous, drawn, as stated by some of the parties, by a layman. It is very doubtful as to whether or not it called for a delivery of the abstracts by the 10th of April. The latter clauses contained in it would indicate to the contrary. However, the court below found that the setting forward of the time from the 10th to the 14th, that Cureton swore he was authorized to make, was done with the consent of the agent of one of the plaintiffs in error and by direction of the agent, who is her husband and co-owner and co-plaintiff in error.

From a reading of this testimony, it is very evident that with reference to this matter, the wife did constitute the husband her agent in the matter of the details of the exchange, as found by the lower court. There is some evidence strongly indicative of that in this case, and strongly indicative of the fact that the wife trusted her husband implicitly, and that the proposition of the change from the 10th to the 14th, and of time being so much of the essence of the contract, was not strong in the minds of the plaintiffs in error until for some other reason they decided they did not want to go on with the trade.

With reference to the new evidence, coming from another real estate agent, the lower court heard all of the testimony. The evidence was in sharp conflict. It had a right to believe whom it would, as long as it was reasonable to believe it, and it found against the contentions of the plaintiffs in error. As the lower court saw the witnesses and their demeanor, we feel that we should not disturb its findings in a case where the testimony was in such conflict. As to the claim that the deed tendered did not follow the contract, and the judgment therefore was erroneous in ordering each party to assume the indebtedness that existed on the property, there is respectable authority that had the parties not interpreted the matter in the way they have, as is shown by the failure to complain during the progress of the litigation, a contract worded like this would carry with it personal liability. Here it appears that at no time during the progress of the litigation below did it occur to the lawyer who handled the case that there

was anything worth considering in the proposition of the assumption of the debts being required as a cause for reversal of the action of the court below. The fact that the full commission was paid, by the plaintiffs in error, for making the sale, is strongly indicative of the fact that the sale was in fact made. If this be true, there is no reason why it should not be completed by vesting the parties with the legal title to the exchanged property.

It is apparent in this case that from some cause, perhaps it might be the inability of the defendants in error to save plaintiffs in error harmless from the payment of the $22,000 mortgage upon the apartment house, the plaintiffs in error decided to cease the negotiations, but we are not able to say that the trial court's findings are in opposition to the clear weight of the evidence. On the contrary, they appear to be fair and reasonable under the circumstances.

We further think that the conduct of the plaintiffs in error was such as to show that they were not insisting upon the abstracts being delivered by the 10th of April, and in view of the fact that, in any event, six full days were allowed by the contract, as originally drawn, for getting in the abstracts and that the examination by the plaintiffs in error of the contracts before they were returned for exchange and delivery, after being signed, lasted from the 4th to the 7th, and the abstracts were tendered on the 12th, we do not think that the obligations created by the contract were discharged.

Under these conditions, we think the action of the lower court was correct, and the case is affirmed. The lower court will proceed to take the accounting and to render final decree and judgment as found by it to be just and equitable and in accordance with the views herein expressed.

CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., dissents. LESTER, C. J., and RILEY and HEFNER, JJ., absent.