EQUITABLE B. & L. ASSOCIATION v. VANCE.

1. PLACE OF PERFORMANCE.—The contract in this case was intended to be performed in the State of Georgia.

2. B. & L. ASSOCIATION—USURY—INTEREST—BORROWER.—A member of a building and loan association owning stock, and borrowing money therefrom, occupies dual positions, each separate and distinct, (1) that of a member of the corporation, and (2) that of borrower from

the corporation, and the monthly payments made on the stock cannot be blended with the payments of interest on the loan, to ascertain the rate of interest paid, and thus make up usury.

3. *B. & L. Association* v. *Dorsey*, 15 S. C., 462, *distinguished* from this case.

4. PETITION FOR REHEARING refused.

Before TOWNSEND, J., Laurens, May, 1896. Affirmed.

Action in foreclosure by the Equitable Building and Loan Association against Mary C. Vance.

The Circuit decree is as follows:

This is an action to foreclose a mortgage given by the defendant to the plaintiff on February 5, 1892; on a tract of land in Laurens County, S. C. The plaintiff is a corporation, created and existing under the laws of Georgia, and its principal office is in Augusta, Ga. The defendant is a resident of Laurens County. In June, 1891, the defendant subscribed for thirty shares of stock in said association. Under the charter and by-laws of the association, she had to pay $15 per month on the shares till the shares matured, in order to entitle her to participate in the profits of the association. On February 5, 1892, she borrowed $1,500 from the association, and gave the bond and mortgage involved in this action. Under stipulations entered into, the defendant was to pay an additional monthly instalment of $7.50, as interest on this loan, from the date of the loan, February 5, 1892, to February 5, 1900, the date of maturity of the debt, and the debt was to be paid by the matured stock, on which the defendant had, prior to the loan, as already stated, been paying a monthly premium or instalment of $15. So that if the defendant had continued to pay $15 monthly as premium on stock and $7.50 monthly as interest on loan to 5th February, 1900, the debt would have been paid by the matured stock, without any further effort on the part of the defendant. But the said stipulations further provided that if the defendant should fail to pay any of the said monthly payments and should be in arrears for six months, then the whole principal loaned should become due and payable.

The defendant paid her monthly instalment of $15 from June, 1891, to February 5, 1892, when she borrowed the $1,500, and then paid both the $15 and the $7.50 monthly up to and including September, 1894, when she ceased to pay. Then this action was instituted, more than six months after she ceased to pay, to wit: on the 14th August, 1895.

The defendant denied each and every allegation of the complaint, and pleaded usury. It was referred to Col. B. W. Ball to take the testimony, and the incorporation of the plaintiff under the laws of Georgia was admitted, and also that defendant borrowed this money for the benefit of her own estate, and declares her intention to charge her own separate estate with the debt. The question of usury is the most important point to be considered, but back of that and preliminary to it is the question, where was the contract to be performed—was it to be performed in Laurens County, S. C., or in Georgia? They had a right to contract in reference to the laws of South Carolina or in reference to the laws of Georgia. There is no oral testimony on this point, and, therefore, we must be governed by what appears upon the papers introduced, and the surrounding circumstances as shown by the testimony. None of the papers state directly where the contract was to be performed. They purport to have been made in South Carolina, but that is not conclusive. All the terms of the contract should be examined, and the surrounding circumstances, and, thus considered, I am forced to the conclusion that the parties to that contract intended that it should be paid in Georgia. The question of usury will, therefore, be considered under the Georgia law. In the first place, it is not more than six per cent., because $7.50 per month is exactly six per cent. of $1,500. The other payments are independent of the loan, and had to be made whether a loan was made or not. But independent of this, the law of Georgia provides as follows: "That no fines, interest or premiums paid on loans in any building and loan association shall be deemed usurious, and same may be collected by law in this State, and according to the

terms and stipulations of the agreement between the association and the borrower." So that even if something more than six per cent. had been charged, or even more than eight per cent. (the rate allowed by South Carolina law), it would not be usury under the Georgia law. I conclude, therefore, that the contract is not usurious, and that plaintiff is entitled to a judgment of foreclosure for the amount claimed in the complaint for debt and attorney's fees, to wit: $1,551.04, and I so find.

From this decree the defendant appeals on the following grounds:

I. It is respectfully submitted that his Honor erred in overruling defendant's objections to, and in admitting and considering the following evidence and testimony: (a.) Printed copy of by-laws of the plaintiff's association, adopted in 1890, and printed copy of amended by-laws, adopted in 1892. Because the first was not responsive to any allegation in the complaint, and the second was not responsive to any allegation of the complaint, and was adopted subsequent to the making of the contract complained upon. (b.) Copy of act of legislature of Georgia regulating interstate building and loan associations, approved October 19, 1891. Because the same was irrelevant. (c.) Pass-book No. 662, of Mary C. Vance, issued by plaintiff. Because same was not responsive to the pleadings. (d.) Mary C. Vance's application, No. 90, for loan. Because same was irrelevant and not responsive to the pleadings. (e.) Certificate No. 662, of Mary C. Vance, for thirty shares of stock. Because same was irrelevant and not responsive to the pleadings. (f.) Testimony of the witness, Jas. B. Walker, as to the distribution of the $940.50 paid by defendant to plaintiff. Because the same was irrelevant, secondary, and not responsive to pleadings.

II. Because his Honor erred in not passing upon defendant's objection to the testimony of the witness, James B. Walker, as to the way the plaintiff arrived at the balance

due by defendant, and as to the plaintiff organizing and going into business according to its charter.

III. Because his Honor erred in finding and holding that the defendant had to pay $15 per month on her shares till they matured, in order to entitle her to participate in the profits of the association.

IV. Because his Honor erred in finding and holding that the contract between the plaintiff and defendant was to be performed in Georgia, when he should have found and held that said contract was executed in, and was to have been performed in, South Carolina.

V. Because his Honor erred in considering and deciding the question of usury under the Georgia law, when he should have considered and decided said question under the laws of this State.

VI. Because his Honor erred in finding and holding that the contract was not usurious.

VII. Because his Honor should have held that the requirement by plaintiff that defendant carry two shares of stock for each $100 borrowed, was a clear attempt to evade the usury laws.

VIII. Because his Honor erred in finding and holding that the plaintiff was entitled to judgment of foreclosure against the defendant for $1,551.04.

IX. Because his Honor erred in not holding that the defendant had paid plaintiff $940.50 on the loan, and that the true amount due by defendant to plaintiff was the sum of $559.50.

*Messrs. Johnson & Richey*, for appellants, cite: *Place of performance of contract:* 19 S. C., 584; 85 Ind., 414; 4 Dall., 325. *Usury:* 15 S. C., 468; 12 Rich. Eq., 124; 45 S. C., 380, 381.

*Messrs. Simpson & Barksdale* and *W. E. Jackson*, contra, cite: *Place of performance of contract:* 142 U. S., 101; 2 Burrow, 1077; 106 U. S., 124; 13 Pet., 65; 19 S. C., 584; 14 Vt., 33; 15 N. Y., 92; 65 Md., 65; 109 U. S., 527. *Usury:* 38

S. C., 185; 1 S. C., 227; 20 Stat., 377; 19 S. C., 584; 22 S. C., 367; 28 S. C., 540, 303; 36 S. C., 12; 37 S. C., 200; 85 Pa. St., 394; 28 S. C., 534; 12 Rich. Eq., 124; 15 S. C., 462; 44 S. C., 121, 130; 45 S. C., 381; 46 Ga., 166; 46 Am. St. R., 138; 47 S. C., 379.

JUSTICE GARY being disqualified, JUDGE BENET was appointed to sit in his place.

June 9, 1897. The opinion of the Court was delivered by

JUDGE BENET, A. A. J. Mary C. Vance, the defendant and appellant in this cause, subscribed in June, 1891, for thirty shares of stock in the Equitable Building and Loan Association, a corporation created and existing under the laws of Georgia, with its principal office in Augusta, Ga. On 5th February, 1892, the defendant borrowed $1,500 from the association, and executed her bond and gave her mortgage to the association on land in Laurens, S. C. On condition broken the plaintiff brought its action for foreclosure on August 14, 1895. Besides a general denial, the defendant set up the plea of usury, and also claimed that sundry large payments made by her should be credited on her bond. The cause came on to be heard by his Honor, D. A. Townsend, Circuit Judge, who in his decree held that the contract was to be performed in Georgia, and to be construed according to the laws of that State; and that according to the laws of Georgia the contract in question was not usurious. The Circuit decree and the exceptions of the defendant should be embodied in the report of this case. Indeed, there is little need of adding anything to the decree of the Circuit Judge, which in our judgment should be affirmed. The leading questions raised by the pleadings and the exceptions are: 1. Was the contract to be performed in Georgia or in this State? 2. Was the contract usurious?

The issue as to place of performance is a mixed question of law and fact. The Circuit Judge reached the conclusion that the parties to the contract intended that it should be performed in Georgia. In this, after carefully

considering the testimony, we can find no error. After thus concluding, it followed as a matter of course that the defense of usury would fail, because it is laid down in the law of Georgia "that no fines, interest or premiums paid on loans in any building and loan association shall be deemed usurious."

The Circuit Judge might have gone further and held that, even under the laws of this State, the contract was not usurious. Referring to the rate of interest charged, he says in his decree: "It is not more than six per cent., because $7.50 per month is exactly six per cent. on $1,500. The other payments are independent of the loan, and had to be paid, whether a loan was made or not." Here he touched the very marrow of the matter, when he indicated that the payments made by the defendants referred to two distinct transactions, which should not be blended. In one she acted as a stockholder, and paid monthly instalments on the stock she had purchased; in the other, she acted as a borrower of money, and paid interest monthly on the loan. The testimony shows that the defendant subscribed for thirty shares of stock in the association, in June, 1891, and agreed to pay $15 per month on those shares until they should mature. She thus became a stockholder in a money-lending concern. Seven months later, in February, 1892, she borrowed $1,500 from the association, giving her bond and mortgage to secure the loan, and agreeing to pay, as interest on the amount borrowed, $7.50 per month. She thus became a borrower from the money-lending concern of which she was a shareholding member. As a holder of thirty shares of stock, she had to pay $15 a month, and this whether she borrowed money from the association or no. As a borrower of money, she had to pay $7.50 a month as interest on her $1,500 loan—which is at the rate of six per centum per annum, a rate less than that allowed by law in this State. Her plea of usury is founded on the mingling together of 'these two distinct transactions—the paying of the monthly

instalments, or stock-dues, and the paying of the interest monthly. Having thus ascertained that she paid interest at the rate of only six per centum per annum, it only remains to declare that the claim of usury cannot be sustained.

The views herein expressed are not inconsistent with the decisions of this Court in the case of the *Building and Loan Association* v. *Dorsey*, 15 S. C., 462–470. The facts in that case show that the borrower was required to pay a discount or premium in addition to the interest charged ; and he had this to pay on a larger sum than was actually lent to him. The aggregate amount of interest and discount exceeded the legal rate of interest. But in this case no discount or premium is charged; and the only interest paid is upon a sum of money actually advanced to the defendant by the association. And we have seen that the interest paid is less than the legal rate.

Several exceptions were taken to the rulings of the Circuit Judge in admitting certain testimony. We have found no error in the said rulings.

It is the judgment of the Court, that the judgment of the Circuit Court be and the same is hereby affirmed.

Petition for rehearing filed May 21, 1897, upon which the following order is endorsed, June 9: *Per Curiam.* After a careful examination, this Court is unable to discover that any material fact or principle of law has either been overlooked or disregarded; there is, therefore, no ground for a rehearing. It is ordered, that this petition be dismissed, and that the stay of the *remittitur* heretofore granted be revoked.