LEFORS v. MIAMI BLDG. & LOAN ASS'N.

No. 30671. Nov. 10, 1942.

*130 P. 2d 997.*

J. J. Smith, of Miami, for plaintiff in error.

Arthur G. Croninger, for defendant in error.

HURST, J. Plaintiff, Miami Building & Loan Association, sued defendant, Vida B. Lefors, to recover the balance due on a promissory note, and to foreclose a mortgage on real estate given to secure the payment of the note. Judgment was rendered for plaintiff, and defendant appeals.

This is the second appeal in this cause. Lefors v. Miami Building & Loan Association, 183 Okla. 410, 82 P. 2d 1029. The pertinent facts, and the issues presented by the pleadings, are stated in the first opinion. At the trial defendant was permitted to amend her answer by striking out the portions thereof which this court held did not constitute defenses to the action, and to insert in lieu thereof an allegation that by the 91 payments made by her, and by the dividends amounting to

$158.01 allowed and actually applied to her account by plaintiff, she had overpaid plaintiff in the approximate sum of $354.01. The defendant in her pleadings, as amended, asserted three defenses to the action, (a) that plaintiff fraudulently withheld its earnings, and placed them in its reserve fund, to prevent defendant from receiving dividends, (b) that defendant was entitled to dividends upon stock subscribed for by her, and (c) that she had overpaid plaintiff as above set out.

The trial court made findings of fact and conclusions of law. It found that defendant, on October 22, 1917, borrowed from plaintiff the sum of $1,500, with interest at 10 per cent per annum from date; that in the note she agreed to pay plaintiff the sum of $24.50 per month, said payments to be applied, first, to the payment of any insurance, taxes, or other proper charges against defendant, second, to the payment of interest due on said loan, and third, the balance, if any, to be applied to the payment of her stock subscription; that she on the same date executed the mortgage sought to be foreclosed as security for the loan; that on the same date she subscribed for 15 shares of plaintiff's class A stock, which was issued to her, and was by her endorsed and delivered to plaintiff as additional collateral security for the loan; that defendant made regular monthly payments as provided by the note up to an including the month of May, 1935; that $12.50 of each payment was applied to the payment of interest on the loan, and $12 to the payment of the stock subscription; that dividends were declared on the stock which were added to the payments on the stock subscription so that on June 30, 1935, the withdrawal value of the stock was $1,226.01; that on November 13, 1935, plaintiff applied the withdrawal value of the stock on the loan, and that after such application there remained due and owing from defendant to plaintiff the sum of $348.99. The court also found that defendant had paid, as interest and on the stock subscription, the total sum of $2,033.50, and that on June 30, 1935, defendant tendered to plaintiff the sum of $24.50 in full satisfaction of the loan, which tender was refused by plaintiff, and that defendant refused to make any more payments.

The trial court concluded as a matter of law that the contract to buy 15 shares of class A stock was valid and binding, and that plaintiff had the right to apply $12 per month upon the purchase price of the stock, and $12.50 as interest on the loan; that by her refusal to make further payments upon the interest and stock subscription, other than the one payment tendered, defendant breached the conditions of the mortgage, and that plaintiff was entitled to judgment for the balance due, and to the foreclosure of the mortgage. It further concluded that defendant had failed to establish her defense of payment, to establish that plaintiff had fraudulently or arbitrarily refused to declare dividends upon her stock, or had failed to perform its legal duty as to dividends, or that defendant had not been credited with all dividends to which she was entitled. Judgment was rendered for plaintiff for $348.99, and for foreclosure of the mortgage.

Defendant contends (1) that in computing interest upon the loan plaintiff should have given her credit on the note for the amount paid on the stock subscription, which would have made the monthly interest over the entire period of the loan $6.50 per month instead of $12.50, and that the application of the balance of $18 to the purchase of the stock, instead of $12, would have made the value of the stock equal the amount of the loan, or paid out the stock in 83 payments, so that all payments above 83 should be recovered by her from plaintiff, (2) that dividends credited on her stock should have been computed on the face or par value thereof, instead of on the amount of purchase price paid on the stock, and (3) that the dividends declared were less than they should have been, considering the financial stability and earnings of plaintiff.

1. The first contention assumes that payments on the purchase price of the

stock reduced the loan pro tanto. We do not agree. The loan contract and the stock subscription were separate contracts. Aetna Bldg. & Loan Ass'n v. Hahn, 82 Okla. 110, 198 P. 331; Hickman v. Oklahoma Savings & Loan Ass'n, 169 Okla. 224, 36 P. 2d 928; Walker v. Local Bldg. & Loan Ass'n, 176 Okla. 168, 54 P. 2d 1078. The fact that the stock subscription was contained in the note, or referred to therein, did not necessarily make them one contract. The evidence shows that the accounts were carried separately on each, and it is not contended that defendant was misled by the reference to the stock subscription contained in the note, or that she did not understand just how her payments would be apportioned between the two accounts. The evidence establishes that the transaction was in the usual form of building and loan association loans, and contemplated the retirement of the loan by the cancellation of the stock when the portion of the monthly payments apportioned to the purchase of the stock, plus the dividends thereon, equaled the face of the note. The plan upon which the loan was made is sanctioned by our statutes, and our prior decisions, above cited. If, as contended by defendant, plaintiff is by such plan enabled to realize approximately 18 per cent on money loaned by it, any attack upon the plan as violative of the usury laws should be addressed to the Legislature.

We hold that the evidence does not establish payment or overpayment of the loan.

2. The second contention is likewise without merit. The method of computing dividends was clearly set forth in the by-laws of plaintiff. Thereby it was provided that "The dividends so declared shall be credited to the accounts of the installment and prepaid stock in proportion to the net amounts paid in on such stock, and the time such amounts have been in the treasury of the association since the dividend date last preceding." The statutes do not provide a method for the computation of dividends. The by-laws were sub-

ject to the approval of the building and loan board. 18 O. S. 1941 § 315. They were so approved, and became a part of the contract between plaintiff and defendant (Federal Sav. & Loan Ass'n of Oklahoma v. Baxter, 185 Okla. 311, 91 P. 2d 760) and in the absence of statutory regulation of the particular matter with which they dealt, are to be taken as the governing law. 18 O. S. 1941 § 223; Federal Sav. & Loan Ass'n of Oklahoma v. Baxter, supra. The method of computation of dividends to be credited on her stock was known to defendant, or could have been ascertained by her, before she secured the loan, and she may not now complain that it is inequitable.

3. The third contention is based upon what defendant contends was the disproportion of plaintiff's surplus to the dividend rate. The evidence establishes without conflict that the dividend rates for the years of which defendant complains were fixed by the State Building and Loan Board after a study of plaintiff's financial statement. The trial court heard a great deal of evidence upon this question, and decided that the evidence did not sustain defendant's contention. We have examined the record, and find that the judgment of the trial court is supported by the evidence.

Affirmed.

WELCH, C. J., and OSBORN, BAYLESS, GIBSON, and DAVISON, JJ., concur. CORN, V. C. J., and RILEY and ARNOLD, JJ., absent.